It's AT&T Mobility and v. Yeager and for the appellant on this case we have John Williams on behalf of the appellants. I'd like to reserve five minutes of my time for rebuttal and I'll keep an eye on the clock. I'm going to use my time this afternoon to put a final point on a few key issues in this appeal and the first issue I'm going to address is the district court's anti-SLAPP ruling. There are two key considerations the court should analyze, this court should analyze de novo when examining the district court's anti-SLAPP ruling. One, whether the gravamen of the cross claims pled was to challenge or arose from protected activity and two, whether Boland's refusal to provide an accounting of sums already collected was protected petitioning or expressive activity. Well I have a threshold question which is whether we really need to address the SLAPP issue because as this was briefed to the district court it was and then the district court said that it was going to look at it as a SLAPP motion but then in analyzing it as I read the district court's order the district court looked only at the pleadings and judicially noticeable materials. So could we just review this as a 12b6 and skip all those SLAPP issues? I mean if the complaint didn't meet Iqbal Twombly in light of the judicially noticeable materials the SLAPP issue seems to drop out of the case. My response to that your honor was my understanding of the record was that the court denied the motion to dismiss as moot in light of its ruling on the anti-SLAPP issue and that the parties have briefed the case with respect to the ruling that was actually made by the district court which was an anti-SLAPP analysis and not a motion to dismiss and so that if the court were to decide it based on the motion to dismiss it would be deciding it based on an unbriefed issue. No but you've had to address in order to challenge the ruling you had to address both aspects of the SLAPP ruling so you know the first part whether you know SLAPP is triggered and then the second part whether you had made the showing required you know to respond to the to the SLAPP motion and that will be six issues. Well our position I'm sorry I didn't mean to interrupt your honor our position is is that Boland did not meet her initial burden of satisfying prong one of the anti-SLAPP analysis and so the the issues related to prong two which I believe you're considering as as being the same as would be considered in a motion to dismiss never never rise in this case. No but you briefed prong one and prong two right I mean because you need both of them to win. Well no if if if she doesn't satisfy prong one then the anti-SLAPP motion is denied and that's our position that she that Boland has the initial burden to satisfy prong one and did not do so in this case and therefore the analysis on prong two is not required by this court. If this court agrees that prong one was not satisfied that was Boland's burden then prong two is not relevant to the consideration of any of those issues and that's our position here. So you concede that if if we're in SLAPP and you lose on prong one you concede you lose on prong two. We didn't challenge prong two in the appeal because we believe that prong one was not satisfied but yes we would concede that point if we do not prevail on prong one. Run me through your argument on prong one because I'm inclined to be skeptical of it but let me hear you state it in the best way you can. Thank you your honor so the argument on prong one is is that the gravamen of the cross claims was to seek an accounting from Boland meant to address a good faith dispute concerning whether Boland had already collected all funds to which she was legally entitled under the Boland judgment. In particular at the outset of those cross claims the nature of the action describes how those cross claims arose out of Boland's refusal to provide an accounting of money she had already collected to recognize all debts to Boland had been satisfied. Paragraphs 13 and 21 then explain how Boland's former attorney Mr. Serlin claimed to have given a portion of the funds Boland previously collected approximately $120,000 to a Daniel Wilcoxon counsel who had previously represented General Yeager. So this raised the concern that Boland was remaining a claimant in the interpleader action even after fully collecting on the Boland judgment to assist others in collecting against the interplead AT&T funds. Such a concern was reasonable as Mr. Serlin never filed a formal dismissal of Boland from the interpleader action nor did Serlin expunge previously asserted notice of lien consistent with his prior claim that Boland was entitled to all of the interplead AT&T funds. So by asserting those cross claims Victoria Yeager did not challenge Boland's prior collection through other legal means. Instead the thrust of that action the gravamen of that action was to request a full accounting of all monies collected to date to ensure that Boland was not over collecting by remaining a claimant in the interpleader action for the benefit of others. Those cross claims would therefore permit the district court to examine and determine with certainty the exact amounts Boland had previously collected, extinguish or expunge any existing liens asserted by Boland on amounts already collected and require the return of any funds over collected by Boland on behalf of others so they would be available to satisfy other competing interpleader claims and not be diverted to third parties. In the anti-SLAPP context the critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity. Here the cross claims were based on Boland's continuing participation in the interpleader action coupled with Boland's refusal to account for all sums she previously collected not on any prior collections actions taken outside the interpleader action a fact that the district court acknowledged. At very most those cross claims were triggered by or merely incidental to those past collections efforts but did not arise out of them as the city of Cotati case requires. This is particularly so given the nature of the accounting remedy. It is a species of disclosure predicated upon the plaintiff's legal inability to determine how much money if any remains due. When Victoria Yeager previously requested an accounting for Boland of all sums previously collected those requests were refused. Consequently the conduct from which Victoria Yeager's cross claims arose is Boland's refusal to account for the sums Boland had collected to date on the refusing or failing to account for sums collected is not a protected petitioning activity and we cited the court to the Bahrain case and to the Blackburn case for that proposition. So my best argument is the district court was mistaken when it misconstrued the grabment of Victoria Yeager's cross claims and further failed to recognize that any connection it had to Boland's lawful collection efforts were merely incidental and as such this court should conclude that Boland failed to satisfy its threshold burden on prong one of the relevant anti-slap analysis. I still have trouble I mean I just went through again looking at the discussion in the district court's order on prong two and it doesn't cite anything other than the complaint and request for judicial notice. It relies on a standing ground that seems you know to be in unchallengeable from a 12b6 point of view. I mean it seems like we're almost like a setup to decide a difficult slap issue when you don't even challenge the prong two and the prong two was done as a 12b6 and there was a parallel 12b6 below so this this seems like it's pointless. Judge Collins my response is my client does not have the initial burden to demonstrate satisfaction of prong one. Your client has the burden to plead sufficient facts in the cross complaint to establish her standing when she wasn't the judgment debtor. That's the ground. She wasn't the judgment debtor and she didn't have an assignment and there are no facts in that cross complaint to satisfy those elements. This is a easy Iqbal Twombly case. Why you know she did it as slap. It could have been done as a 12b6. You don't contest the correctness of that analysis which is fatal under 12b6. Why do we have to go through this gyration in this to decide this potentially difficult slap issue? So two answers to your question and thank you for both of those. First off again the burden was on Bolin to establish that this was protected activity and that the grabment of the cause of action arose out of that protected activity and so our challenge to the district court slap ruling is based upon prong one and the issue of standing is a prong two analysis and so our position is the district court got prong one wrong. Misconstrued the grabment of the cause of action for accounting and in that respect the issue of that prong one was not satisfied. That's not our burden to demonstrate that that was satisfied. Mr Williams I'm sorry to interject but did you want to hold to the right further time for rebuttal? I do thank you your honor and and I will. I'll reserve the balance of my time for rebuttal. Okay Mr. Noonan please proceed. Thank you your honor. May it please the court Todd Noonan appearing on behalf of the Bolin parties and Judge Collins I'm going to dispense with my my introductory remarks and drive right at your question which was why does the district court address the slap issues when we also filed the 12b6 motion and I think the answer to that question was mentioned by the district court and it's certainly been mentioned by this court including in panels that included Judge Fletcher and Judge Gould and that is the the substantive protection the very important substantive protection provided to defendants such as the Bolin when their their petitioning activities when their first amendment activities are targeted by a lawsuit and you know the the discussion in in Planned Parenthood which co-states the district court's here but emphasizes the substantive protection offered to the Bolins particularly here through their attorney's fees award and so I think the district court actually did it properly in terms of you want to stay within the slap box because of the fees even though the same outcome would come out under 12b6 because the fees you get the fees if it's in the slap box you'd rather stay there that's correct your honor and and that is is the real protection offered to someone like Bolin who is who is targeted for frankly having tried to collect on their judgment and and while I I recognize I'll I'll term it you did not use these terms I'll term it a hypothetically difficult slap question it's really not a hypothetically difficult slap question it is a dead bang slap lawsuit you know I stood before a different panel of this court 10 years ago representing the Bolins as a defendant when they had been sued by General Yeager and they prevailed and were awarded their attorney's fees and then this court affirmed and awarded further attorney's fees the Bolins then spent the next several years trying to collect on those two fee awards and they did so entirely within the judicial system they did so through leans in pending actions they did sue through an independent declaratory relief action and they had a contempt proceedings that they brought against Mrs. Yeager in the underlying action that they prevailed in and they brought actually engaged in a settlement discussion that was supervised by an eastern district magistrate judge all of which should have put best to this case so you don't contend that all collection activities are qualified for slap protection at found one well that's I'm not sure how to read that because I can envision improper collection activities somebody hires the guy with the lead pipe and and says pay up Mrs. Yeager but but here we had judicial remedies we had a leans filed in lawsuits which bring with it a panoply of protection we had lawsuits filed in in efforts to resolve conflicts we had settlement conferences supervised by by judges and these are activities endorsed both by California state courts and by as protected petitioning activities and so certainly with every single activity at issue in this case and every single activity challenged by Mrs. Yeager we would say yes those absolutely arose out of protected activities because the form of the it's it's not so much that it's an execution of judgment it's that the form of the the form of the execution of judgment was itself proceedings in a court yes certainly within the four corners in the context of this case that's exactly right okay as a practical matter is Victoria Yeager judgment proof I'm trying to figure out really assume you get an award of fees because we would affirm on the on the slap ground are there are the fees collectible I mean does it make it does it make a practical difference yes it does your honor first of all I have no reason to believe Mrs. Yeager is judgment proof there's no evidence in the record to suggest that she actually did satisfy the underlying district court judgment and so those monies were paid by her and so there's no reason for me to believe and no reason for me to represent to this court that she would somehow evade or not pay with respect to the remainder of prong one I know the court has gone through the cross complaint it's really replete with references to past conduct by the Bolin's it speaks of their failing to recognize the satisfaction of judgment on multiple points including paragraph 1 and there's a direct reference a request for damages and a contention of unjust enrichment all of which is backward looking Mr. Williams in arguing just now also made reference to what he termed failures by the Bolin's in the in the interpleader action failures to expunge liens or failures to dismiss claims and I wanted to clarify for the court with respect to collection proceedings that neither of those activities were required first in the interpleader action the Bolin's didn't have a counter claim or a cross claim they filed an answer and their answer contended that they were entitled to money because at the time that they filed that answer they had filed a lien and actually the underlying action the AT&T action that proceeded to verdict and led to the the amount that was placed into interpleader and so that was the only basis for their claim when they got started in the AT&T action was that lien there was no claim for the Bolin's to dismiss in 2015 they filed satisfactions of judgment in the Yeager versus Bolin case that was their requirement under the California Code of Civil Procedure they file and serve those two satisfactions and that's the only obligation put on a creditor there's no further action that they need to take their claims disappear as a matter of law what's the reference in the cross complaint where there's a complaint that the Bolin cross defendants had not filed the satisfaction of judgment and it refused to do so so this is an allegation by Mrs. Yeager she is contending that the Bolin's should have filed the satisfaction sooner I believe she argues that they should have done it as in March of 2014 rather than in the summer of 2015 when they did and that actually emphasizes and draws out our point your honor that Mrs. Yeager is in fact challenging past election activity through her cross complaint so at the time this cross complaint was filed and alleged that they had refused to file the satisfaction of judgment it had all in fact already been filed a year before now what about the further allegation is about a claim for an you ended up with more money than you were entitled to get and this is what's an accounting of the excess sum that's correct that that is her her claim and and frankly the way you articulated it just now Judge Collins is different from the way that Mr. Williams articulated it in his in his remarks because the way you argued and suggested it would be pledged the way it would have to be pledged you need an underlying wrong in order to pursue an accounting this is a case cited by the appellants Prakash Palan which essentially states there must be some underlying misconduct on the part of the defendant in order to that seems to be what paragraph 28 says it says that the Bowen cross defendants have been unjustly enriched in receiving monies from Victoria Yeager and all judgments I don't know if we're talking past ourselves maybe I'm too fixated on the prong one inquiry I would agree with you that that is what she alleges she alleges over collection what I am suggesting to you is that over collection only occurred through the judicial process if it didn't actually occur but if we're to take her allegations as true those uh the only over collection could have taken place through collection on liens through declaratory relief actions that were settled leading to entry of judgment and through settlement conferences before Judge Newman those were the events that were brought before the district court through a request for judicial notice those are the events put at issue by the pleading all of those events arise from the Bolin's protected post-judgment collected collection activities and thus would trigger prong one irrespective of the remedy the accounting remedy that's then overlaid on that conduct so is any portion of the sum that is alleged to be overpaid is any portion of that a check that was written by the acres so this is a difficult question to me because we're in an alternate universe there was no overpayment no I understand no but you have to take this as oh no of course of course your honor but if we look at the uh the settlement conference uh that occurred before Judge Newman and this is in the supplemental excerpts of record there's the the transcript of it and it actually you'll see Judge Newman go through with exhaustive care trying to ensure that both sides fully understood and Mrs. Yeager and General Yeager were physically present my clients were present by phone he goes through an exhaustive care trying to make sure everybody understands we're reaching a deal here and that leads to the payment of a check by General Yeager and when he pays that check the district court the first judgment was satisfied this court's order awarding fees the amount of those fees had not yet come out by that time and so that was an open issue the Yeagers had agreed to write a check for that when that came out they didn't do that and that's why there was a supplement a supplemental effort by the Bowens to collect through one last litigation and that was the San Francisco Superior Court case when that was done the judgments were satisfied this is August of 2015 and the satisfaction of judgment was filed okay so your position is that because all of the actual collection activities that are necessarily challenged in the cross-complaint took place in the courts and not through other types of methods that's what makes it slappable and prong one yes your honor absolutely and and and certainly we explored in our brief and I will not burden with you now the cases that that in fact are quite on point in terms of describing the validated and recognized prong one activities moving on in terms of prong two I think we heard from the appellants that they did not challenge that through the opening brief and so that issue has been waived it's really been waived at two levels not only as to standing but as to the alternative grounds to affirm which in our view would very much include the litigation privilege in this case same same too with the the award of attorney's fees no challenge was raised by the appellant with respect to that award of attorney's fees assuming that the prong one trigger has been met Mr. Williams didn't have a have a chance but I know it's an issue that that's equally at in dispute on this appeal and that relates to the vexatious litigant ruling and I'll keep my comments on on that brief just to emphasize that that is an abuse of discretion standard and here you had a district court judge who was not only experienced but very careful and very deliberate and incremental and how she approached not only this order but frankly the entire case she had a a claimant and Mrs. and General Yeager who exhibited signs in front of her of losing competence and she caught because these litigants were in front of her frequently and in person she noted that and and imposed or requested the appointment of a guardian ad litem to protect General Yeager's interest she exhibited the same care and caution with respect to this vexatious litigant order she frankly didn't accept our first showing but she has the right as a district court sua sponte under the Dallon case to continue forward with the vexatious inquiry she asked us for supplemental briefing which we provided and that briefing is really quite comprehensive and substantial in demonstrating the type of abuse that Mrs. Yeager's litigation practice has brought against the Bullens and one of the points that's emphasized in the replies this notion that 391b3 somehow doesn't extend beyond just the interpleader action and running low on on time but I'll just emphasize for the court that the plain language of the statute speaks to any litigation and so Judge Mueller clearly clearly had the right to look beyond just the interpleader action before to see how that the Yeagers had targeted the Bullens with their action and with that your honor my time is up and I thank you for your time and submit. Thank you Mr. Noonan. Okay Mr. Williams you've got some rebuttal time. Thank you I appreciate that I want to turn back to the prong one of the slap analysis again the challenge that was made by the cross claims was not to the legal process the legal collection process that Bullen pursued in other actions to collect on the Bullen judgment the district court acknowledged that in its ruling that that was not the the crux of the cross claims that the the crux of the of the cross claims was that as late as June of 2015 Bullen had filed through Mr. Serlin a lien in the interpleader action continued to maintain the the previously pled position that the Bullens were entitled to the full amount of all of the AT&T and that there was a concern that if in fact the Bullens had fully recovered what they were entitled to recover from these other legal processes that with respect to their remaining involvement in the interpleader action that there was a concern that they were over collecting or remained in that action to assist the collection of other claimants and that was based upon Serlin's representation that $120,000 of what they had collected was directed to someone else but I'm looking at the district court's ruling in the section on the gravayment of the complaint and it says the record demonstrates that the Bullens satisfy their judgment exclusively through counsel and the courts and it says Mrs. Yeager argues that he wrongfully over collected on their judgment but by challenging the judicially approved amounts the Bullens collected so it seems to rely on the reading that the gravayment of the complaint is that they just are challenging collections that were done entirely through the courts that's that that is true that is the district court's ruling what I'm suggesting to you is that that is incorrect and that this court on de novo review should conclude otherwise it should conclude that the gravamen of the complaint was to seek an accounting in the interpleader action of what had been collected already through those legal processes because there was a concern that the Bullens remained involved as a claimant as someone who had filed a lien and not expunged the lien in that interpleader action and were seeking to collect additional funds so rather than the legal process or the legal collection process being the gravamen of those cross claims it was incidental to the the cross claims it triggered the cross claims but the gravamen of those cross claims was simply to seek an accounting which Bullen through her attorney had refused to provide then the accounting had been requested and that accounting was denied and so that is the activity that is being challenged by the cross claim again there was barely calling the question the amounts that the courts allowed in the processes to enforce the liens wouldn't it I think that it's related to that I think it's incidental to that in it and it then triggers the question of why Bullen remains in the interpleader action why that the notice of lien that Bullen filed as late as June of of 2015 was never expunged consistent with Bullen's claim at that time that that Bullen was entitled to all of the interplead funds that that claim never went away by way of a Bullen's answer so that the law makes a distinction between a claim that arises out of protected activity which is subject to motion and a claim that is merely triggered by that activity or is incidental to that activity and it's our position that the district court got that distinction wrong that in this instance the what was being challenged was the the non-expressive non-protected act of refusing to account for what had already been collected by Bullen through legal means or otherwise and that the gravamen of that of the cross claims was to challenge that that conduct not to challenge the legal process that had already occurred previously that triggered that concern but it wasn't what was being challenged by way of these cross claims thanks Mr. Williams I see you're about a minute over your time and so we should bring your argument to a close I appreciate that your honor so so unless there's further questions from the panel we'll submit okay hearing none this case will be submitted and the parties will hear from us in due course and again I want to thank both Mr. Williams and Mr. Noonan for their advocacy to us we really appreciate getting such excellent presentations on behalf of your respective clients so thank you with that the case shall be submitted and the court will take a 10-minute recess before proceeding to the royal holdings and linger case arguments
judges: FLETCHER, GOULD, COLLINS